The first case on the afternoon docket is number 4-15-0153. Daniel, is it Igwe? Daniel Igwe v. Decatur Memorial Hospital. Appearing for Appellant is Mr. Koeppel. And for Appellee is Ms. Anderson. Counselor, are you ready to proceed? You may. Good afternoon, Justices. Good afternoon, Counsel. May it please the Court, my name is Casey Koeppel. I am here on behalf of the Appellant, Daniel Igwe. This case is about the how, the where, and the how. Where the facts of this case took place, and how the facts of this case took place. This case raises the issue of whether a service department within an entity specifically enumerated in the Illinois Human Rights Act as a place of public accommodation may be deemed beyond the jurisdiction of the Act. And because the defendant's position violates the intent of the Illinois Human Rights Act, and because the defendant held itself out as the acting entity for the nurse anesthesia program, this case should be remanded to the circuit court so that Mr. Igwe may have a trial by jury. This case also raises the issue of whether the circuit court, upon remand, will be reviewing an academic decision. Because the Appellant's dismissal was related to his conduct, and the circuit court would be reviewing the facts and evidence related to that conduct, this case should be remanded to the circuit court so that Mr. Igwe may have a trial by jury. As to the first issue, I would like to raise a couple of important points for the court today. First, hospitals are specifically enumerated in the Illinois Human Rights Act as a place of public accommodation in Section 5-5-106-A-6. Second, the defendant holds itself out as a regional medical center serving the residents of central Illinois. And third, the nurse anesthesia program is not a separate entity from the defendant. As to the second issue, I would like to raise a couple of important points to the court today. First, although courts do not review academic decisions, they will review whether administrators acted arbitrarily and capriciously in their treatment of a student, including dismissal. Counsel, if Mr. Igwe was dismissed from the program because he brought a metallic object into the MRI room, would that be considered an academic decision? We don't believe that it is an academic decision. We believe it is more along the lines of a disciplinary decision. And if you look at the procedures that the hospital allowed Mr. Igwe to proceed through prior to his dismissal, they reflect more of disciplinary decisions. And if the Horowitz case that was cited, I believe in the appellate and the appellee briefs, talked about how in an academic decision, a student is really not entitled to due process. But however, on a disciplinary decision, they're entitled to notice of the charges against them, the evidence that the authorities have against them, and if he refutes those allegations, a chance to present his side of the story. Going back to your first point about the definition of a hospital being part of a public place of accommodation, isn't that regarding the generic aspect of it that is clearly the legislature intended to say we're not going to permit some hospital to say we don't serve black people, we won't accept black people as patients or other kind of discriminatory matter. But within a particular program of who's entitled to do what, isn't that rather different? We're not talking about a public accommodation any longer. We're talking about a matter of a specific training and specialized area, aren't we? Your Honor, my interpretation of the case law is that that type of analysis comes in when you're dealing with an entity that is not specifically enumerated as a place of public accommodation. For example, the Board of Trustees case that was cited in the appellee brief. At the time of that case, a place of education was not in the statute, and the court said when we're looking at such a claim and the type of entity is not named in the statute, then we have to look at whether that entity is similar to those entities that are named in the statute. It is our belief that because in this case we are dealing with an entity that is named in the statute, that that analysis doesn't necessarily need to come into play. Should we look at what it is that that entity does? In other words, what its purpose is and who it regularly serves, and what services or products it provides to determine whether or not it is a place of public accommodation under the circumstances of this case. More specifically with a hospital, Decatur Memorial Hospital argues it's a place of public accommodation for patients receiving medical services there, perhaps those that are eating in a cafeteria. But here we're talking about an individual who is undergoing a program, training, and therefore it's not a place of public accommodation for purposes of how that program is administered. So what is the ultimate answer to that from your perspective? Just to make sure I'm understanding your question, you're asking should the court consider the services being offered by the entity? The argument, as I gather, for Decatur Memorial Hospital is that a hospital is identified as a place of public accommodation for those that are there receiving medical services, because that's what a hospital is there to provide, or perhaps those that are in the cafeteria and able to be in a place and receive things that the hospital is providing to the general public. But here with this program, it is not something that is open to the general public. It's not what the hospital is typically viewed as providing. Here it is partnering with a school to provide CRNA training. So how is it a place of public accommodation vis-a-vis the CRNA program? Well, our position, Your Honor, is that the argument of the defendant violates the intent of the act. For example, what would stop a patient from coming into the hospital and going into the cardiology department? And then someone in that cardiology department discriminates against that individual in some way. And then that patient comes and files a discrimination claim against the hospital, and the hospital says, well, there's qualifications to get treatment in this department. You know, you have to have certain medical conditions pertaining to the heart, and so on and so forth. And we feel that if that argument is accepted, you would essentially be able to take out most of the service departments within the hospital from the jurisdiction of the act. So then all you have left is, like you said, the cafeteria or the bathrooms or common areas such as those. And we just don't believe, if you look at what the intent of the act is, to give all individuals freedom from discrimination in places of public accommodation. And the Arlington Heights racetrack case that was cited in the appellant brief said that this Human Rights Act is a remedial statute and, as such, should be interpreted liberally. So our position is that that argument doesn't necessarily harmonize with the intent of the act or the fact that it should be interpreted liberally. Counsel, you raised a question about the affidavit of Rhonda G. You discussed it extensively in your reply brief, in which you assert that it's not in accordance with Supreme Court Rule 191A. Is that correct? Yes, Your Honor. Did you move to strike that affidavit for a portion thereof you thought was conclusively in the trial court? No, Your Honor. Why not? Because at that time what we felt was that affidavit was not saying anything that a 191B affidavit would flesh out more facts. We know why Mr. Igwe was dismissed from this program, which is shown in the transcript of the due process hearing. I don't understand that answer. If the 191A affidavit of G. was not in compliance with that rule, why didn't you move to strike it before the trial court? Instead, you're asking this court to disregard it. And you're doing that without having raised the matter in the trial court, without having given the trial court an opportunity to address it. I don't understand what 191B has to do with the sufficiency or appropriateness of the G affidavit. I understand, and you are correct, Your Honor. And the 191B, I believe, was raised by the appellee as to why it wasn't filed to flesh out more facts. Well, the G affidavit was filed, though, wasn't it? Yes, sir, it was. Yes. In page 9 of your reply brief, this court should strike paragraph 21 of the Rhonda G affidavit to the extent that it's not complied with Rule 191A. This court has repeatedly counseled that this is not the appropriate forum to be challenging matters submitted in opposition to or in support of motions for summary judgment. You're supposed to, if you have problems with it, raise the issue before the trial court. Given that you didn't, why should we consider the sufficiency of the affidavit now? Well, we believe that facts and evidence in the record contradicts that conclusory statement at the end of the affidavit that says Mr. Igwe was dismissed for academic reasons. It seems to be a conclusory statement. In the absence of a motion to strike, can the trial court rely upon it, kind of like unobjected to hearsay? If I'm the trial judge and I have this affidavit in front of me and your silence regarding it, what am I supposed to do? I would say that the facts and evidence in the record contradict that affidavit. Well, what am I supposed to do with regard to the consideration of the affidavit at all, is my question. Well, I think it should be considered. It was filed and it's on the record. I just think that it has to be weighed against the other facts and evidence. Like unobjected to hearsay, may I give the probative value that I think it deserves to paragraph 21 that says his dismissal from the program was based on academic evaluations of his clinical performance and the termination of plaintiff was not academically fit? I'm the trial judge. Can I just give whatever weight I think that is deserving since there was no motion to strike it? I believe that you have to consider it and weigh it as to the other facts and evidence in the record. Well, what are we supposed to do now? You're asking us to disregard it even though you didn't ask the trial court to disregard it. Well, I think that because it's on the record and it has been filed, I do think it needs to be considered because, as you said, it wasn't stricken. But I think that based on the, I guess I would say, undisputed facts of how he was dismissed, that I think it is apparent that this was really more along the lines of a disciplinary decision because it was based on his conduct. And that really is out of the mouth of Mrs. G, whose affidavit that was filed in this court. The transcript of the due process hearing, Mrs. G's testimony is in that transcript. As to the court not being required to review academic decisions, we believe that the plaintiff's allegations transform the issue of the adequacy of academic decisions into a non-academic decision. Mr. Igwe, again, was dismissed for bringing a metal stylet into an MRI suite. There were four or five people in that suite. Not one of them could identify him as the source of the metal. Defendant acknowledged this as much in her transcript of the due process hearing. The circuit court will not be required to review whether Mr. Igwe failed a test, whether they gave Mr. Igwe a test and tested him on the appropriate subject matter of nurse anesthesiology. The circuit court would simply have to review the facts and the evidence as to whether Mr. Igwe's conduct matches this allegation, i.e., did he bring this metal object into an MRI suite. He was not treating a patient, which I think would get along the lines of clinical. They just simply said he brought an object into a room. Now, is that specifically to the retaliation count? Yes, it is, Your Honor. And I think that the most obvious reason that this should be remanded is because of the retaliation claim. What is the retaliation count based on? And I don't mean to be cute here. I understand the cause of action if an employer fires someone in retaliation for having made a workers' compensation claim. You can't do that. There's a cause of action that lies if that's what's happened. But if you're claiming that he was fired in retaliation for having made a claim that he was subject to racial discrimination, is that the claim? Yes, Your Honor. Where does that cause of action as a cause of action exist under Illinois law? Well, we don't believe that the statute requires that an actual act or a charge be filed. The statute says it's a civil rights violation for a person or two or more persons to conspire to retaliate against a person because he or she opposed that which he or she reasonably and in good faith believed to be unlawful discrimination. What your claim is based on is that he pursuits racial discrimination charges against the program, the program dismisses him, and now he's claiming retaliation in response to having brought these racial discrimination charges. Yes. Based on that statute? Yes. And I know that the appellee makes the argument that the limited jurisdiction for places of education prevents the court from even hearing this retaliation claim. But if you look at the retaliation claim under the statute, it's in a whole separate article. And that section that limits the jurisdiction on places of education specifically talks about section A, I believe it's A11, that talks about, that brings places of education into the jurisdiction. So I want to close before I run out of time here. Again, we believe that if the defendant's argument is accepted by the court, it really takes the teeth out of this statute. You know, the nurse anesthesia program is not a separate entity from the Decatur Memorial Hospital. You know, what would stop the hospital from saying another service department within the hospital has qualifications to be serviced? And so, and then the retaliation claim we think is the most obvious reason it should be remanded. It is not subject to the limitations placed on jurisdiction for places of education. All right. Thank you, counsel. Ms. Adams. Justices, counsel, may it please the court. My name is Katie Anderson and I'm here on behalf of defendant appellee Decatur Memorial Hospital. I would like to start my argument by addressing the issue we raised that the court lacks jurisdiction because it would be called upon to review academic decisions. I'd like to begin by pointing out that appellant has filed three separate complaints. Each of those complaints were verified. Because of the nature of the verified pleading, they become judicial admissions. And that starts with the original complaint, even if it is superseded by additional complaints. So allegations that he's made have become judicial admissions. If you start out by reading the original complaint, you will see that it is uncontested that appellant was a student in an academic program that was operated jointly by Decatur Memorial Hospital and Bradley University. This program was designed to train students to become certified registered nurse anesthetists and determine whether they were clinically fit and academically fit to pursue that career. The retaliatory conduct as well as the discriminatory conduct of which the appellant complains is in the form of academic decisions. They talk about, I'm sorry, he talks about receiving negative evaluations that were unfounded, receiving negative evaluations when other students received positive evaluations for similar things. His complaint goes on and on about various conduct that was taken in retaliation for him complaining about other negative evaluations he received and he felt that he had received those negative evaluations because of his race. So whether it's the discriminatory conduct or the retaliatory conduct, it will involve this court determining should this student have received a negative evaluation. Appellant makes the argument that this decision was really based on what I'll call the MRI incident where Mr. Igwe was accused of bringing metal into an MRI suite. Can you bookmark where you're at right now? You can come back to it, but I want to ask you to preface your arguments with us knowing under what section of the Code of Civil Procedure did you move to dismiss the complaint? 619, Your Honor. Okay, and under which particular subsection of 619 did you move to dismiss? It was based on lack of jurisdiction, Your Honor. I don't recall the exact subparagraph that I was addressing. And was that the basis for requesting dismissal of all three counts? Yes. It seems to me that in reading the transcript of the hearing in the trial court that you went away from 619 in arguing dismissal of count three based on academic decisions and based it more on a lack of, a failure to state a cause of action. Your Honor, the, we raised in our motion, it was a, if I'm recalling correctly, it was a combined motion. It was a lack of jurisdiction and we believed that there was lack of jurisdiction because it would involve the court, first of all, that the nurse anesthesia program was not a place of public accommodation. And second of all, the court's lack of jurisdiction to hear, to review academic decisions. And you may think this is academic, but in order for us to determine under, you know, how we're to review the matter, we need to know under what section of the Code it's being brought. You mentioned a combined motion to dismiss, which is obviously allowed, but it has to be entitled, a combined motion to dismiss. The only designation in this motion to dismiss that was filed was in the title of it, and it referred to it as a 2619 motion to dismiss. But I'll refer to the arguments again before the trial court. When it came to the issue of academic decisions, you indicated that it was not really a jurisdictional matter. Those were your words, not really a jurisdictional matter. So it's not the 2619 basis that was being argued for counts one and count two, but you referred to it as a failure to state a claim. And then later in the argument, the same phraseology, that the review of academic decisions is really a failure to state a claim. So we're getting into a 2615 motion to dismiss. And so that wasn't planned.  And I just want to make sure that before this court, what we are being asked to review, it seems to me pretty clear the motion to dismiss, counts one and two, were premised on 2619, a failure to establish subject matter jurisdiction based on this not being a place of public accommodation. But count three sounds like you were really indicating that this was a failure to state a cause of action, which is different than a 2619 motion. I understand what you're saying, Your Honor. And our position is that we are arguing that this court, that the circuit court, lacked jurisdiction to hear any of the claims that the appellant made. So that's the affirmative matter as required by 2619? I'm sorry, Your Honor? That's the affirmative matter required by 2619? Yes. Well, so then if that's the case, with count three, where a place of public accommodation is no longer germane, what is it that you're basing your argument on, that there was a lack of subject matter jurisdiction for the trial court to hear a retaliation claim? Because courts do not review academic decisions. Regardless of whether a plaintiff is, originally the appellant proceeded under the theory that we were an educational program, then the theory was switched to a place of public accommodation. But it still goes back to, first of all, courts don't review academic decisions, whether it's an educational program or not, because jurisdiction is specifically limited under the Illinois Human Rights Act. And then if it's a place of public, we don't believe that we are a place of public accommodation. All right. Still, as to the retaliation claim, plaintiff asserts that he was dismissed from the program because he brought a piece of metal into the MRI room. How is that an academic decision? Your Honor, there are, first of all, it involves patient safety. And if a person, the MRI incident involved a situation where he was acting as an anesthesia provider. And there are things that a person who is providing anesthesia, who is going to be in an MRI suite, who is going to be in an operating suite, should know and be concerned about a patient's safety. And if a student is not able to understand and follow the rules and procedures about what kind of medications you should have, whether you should have metal in a room where there is a large magnet that's operating, I think that that can be considered a decision that he was not academically fit for this career. I mean, if he was intoxicated showing up for work and he was let go under that same argument, you could say, well, the student should know that he's not to come to class or to training intoxicated. And therefore, that's an academic decision. I mean, there seems to be a leading down a path that wouldn't have an end to it. Your Honor, I believe that this situation could be distinguished from a situation where it's a disciplinary matter as the appellant has raised. This wasn't an issue about a student fighting in the hallway. This wasn't an issue about a student bringing a gun into a school. This was a trained professional who was in the middle of a case and was accused of bringing metal into an MRI suite. Students who are in this program who are going to be administering anesthesia to patients need to be aware of safety precautions, whether they're dealing with medications, as I mentioned, radiology. But isn't the basis of this claim not that he brought the metal to the MRI room, but that it was a pretext? That's not why he was fired. He didn't really prove it anyway. He was fired because of racial grounds. That's why he was let go. Is your argument that a university is immune from a claim that engages in racial discrimination? I believe that the statute and the case law make it clear that courts do not review strictly academic decisions. That's an interesting point, but not responsive to the question I asked you. I'm sorry, could you repeat the question? Is it your position that universities are immune from claims of racial discrimination? No, except in the sense that it would involve a court reviewing academic decisions. So if a university, in fact, engages in racial discrimination, they can say, and let's assume it's true for the moment. They throw some student out for racial reasons. We just decided we don't want to have any more fill-in-the-blank folks in this program. That's not reviewable because it smacks of being an academic decision, and you may claim it was racial, and maybe it even was, but you can't drag us into court and be held accountable. Is that your position? No, not entirely. However, I think it would depend on the situation and the conduct the student was complaining of. For example, if an African-American student claims that he was graded harshly and should not have received a particular grade on a test, and he felt that he received that grade because he was African-American because of his race, courts have specifically said, and whether it's the Supreme Court, state courts, circuit courts have said, we do not review academic decisions. We are particularly ill-equipped to review those decisions because of the nature, the subjective nature of those academic decisions of a professor, of a doctor, saying this particular student is not academically fit for education. But the retaliatory discharge claim here is based on the statute. It says if someone has raised a claim of being discriminated against on the basis of race, then he can't be retaliated against for having brought that claim. What if it's true? That's why he's being retaliated against. He's left without recourse? No, Your Honor. In this situation, if you look at the Third Amendment complaint that the plaintiff filed, he alleges that he received a series of negative evaluations and then complained to the program director. After complaining to the program director that he felt he was being targeted because of his race, then the retaliatory conduct occurred, and that conduct consists of additional negative evaluations, being placed on probation, being graded unfairly, and then finally culminating in being dismissed from the program. By plaintiff's own admissions in his verified pleadings, he alleges a host of times that he felt that he was evaluated negatively on particular anesthesia cases when he shouldn't have been. Well, why isn't that just surplusage, having nothing to do with the underlying gist of what this complaint is about? Namely, I made a complaint of racial discrimination. Afterwards, I was retaliated against because of that complaint. I think it is surplusage. Well, if it's surplusage, it means we can disregard it. Has he set forth those claims in his retaliation count as I just described? I believe he has, by virtue of the pleadings that he's filed. Why doesn't that state a cause of action? There is no jurisdiction, and courts don't review academic decisions, and that retaliatory conduct consists of... So, he says, the university... I made a complaint of racial discrimination against the university. We'll call it Bradley. And thereafter, Bradley dismissed me from the university. And they did so because I had made that complaint. He gets no day in court on that? I don't believe in the situation where a court will be asked to review the academic decisions that led up to his dismissal from the program. He says that wasn't an academic decision. In fact, it seems to me, in trying to resolve that, we wouldn't be concerned with academic decisions at all, except to the extent that the university might wish to say, well, yeah, it's true, we fired him or discharged him, but it had nothing to do with his claim. Here's the reasons why. But what if his claim is true? He gets no recourse? Because you can say, I'm a university, and I do stuff where I'm not subject to being held accountable for racial discrimination? First, in this case, Your Honor, the way that the appellant has pled his case, in all three of his complaints, which were each verified, he is complaining of conduct that involves him being graded unfairly, evaluated negatively, because of first his race, and then in retaliation... We talked about that as being surplusage, counsel. I don't believe it's surplusage. Well, it's surplusage if it's not necessary to the gist of the complaint that he's making, namely, I was fired because I made a complaint of racial discrimination, and then thereafter, they discharged me. Then none of that other stuff matters, right? Our position is that even if this court were to consider that surplusage, we don't believe it is, but let's say that the court does consider that surplusage. If we just look at the event that immediately preceded his dismissal from the program, the MRI incident, I still believe that that involves an academic determination by the people who are judging his performance and behavior. Well, that would be a defense to his charge that he was fired for racial reasons or discharged for racial reasons. I'm sorry, I don't... When and how does he get a hearing on whether it occurred that he was discharged for racial reasons? Essentially, what you've done is you've said, oh, that's not why we did it. We did it because you did this bad stuff with the MRI. Well, isn't that why we have juries or courts to resolve factual disputes? Isn't this a factual dispute? No. I believe that if you... First of all, if you look at the Illinois Human Rights Act, the legislature was very careful to limit circumstances where it had jurisdiction over an educational program to three circumstances. One, being admitted into the program or denial of admission into a program. Two, denial of goods and services. Or three, severe and pervasive harassment. He obviously was admitted to the program, so he's not complaining that he was denied admission to the nurse anesthesia program. Second, he's not claiming that he was denied access to goods and services in the sense that you're denied access to classrooms or things like that. In fact, the way that Appellant has pledged this is that now he is claiming severe and pervasive harassment. And that severe and pervasive harassment, the retaliatory conduct that he's talking about, are these negative evaluations. It still gets us back to the same point, that this court would be asked to determine, well, that instructor shouldn't have given that student a negative evaluation and here's why. And it would involve the court putting itself in the role of the people who have been tasked to evaluate whether he is clinically or whether he is academically fit for this program and fit to move on and become certified to provide anesthesia to patients. And it would involve the court essentially substituting their judgment and saying, well, no, I think he should have gotten a good evaluation on this particular case. In the looking at the MRI incident, which the Appellant would argue is a disciplinary matter, it was actually a lapse in clinical judgment to bring metal into a room where it is restricted. Providing anesthesia is going to involve many clinical judgments. Should this patient receive this particular drug? Should this patient have whatever services or treatment are necessary? And although it may seem like, I don't want to say trivial, it's not trivial, but this was a determination that this person had a lapse in clinical judgment and did something that endangered a patient's life. You mentioned earlier about the limitations the Human Rights Act provides with regard to the academic context and how they're not supposed to be involved in judging academic matters. The Human Rights Act has the other provision that the plaintiff is proceeding under, the 6-101, the language about it being a civil rights violation for a person with others to retaliate against someone. Is he or she opposed to that which he or she reasonably believes, in good faith believes, to be unlawful discrimination? Are any of the limitations you spoke of earlier applicable to that civil suit, which is, after all, a civil action, and it's not an action brought before the Human Rights Commission? I believe in viewing the statute as a whole, the legislature, which is, and this would be in line with the case law that's out there, made it very clear that jurisdiction shall be limited when you're dealing with an educational program to certain areas. And that's the same argument we made for the public accommodation claims, that a public accommodation is something that provides goods or services to the public, and that it's not what the anesthesia program was doing. And because of that, we can't even be considered a place of public accommodation. So I do believe that the Act, when taken as a whole, makes it clear that there are circumstances in which a court cannot exercise jurisdiction. Well, but there is no reference, for instance, to public accommodation in 6-101. The section doesn't make any difference there, does it? I believe the legislature was clear in its intent to limit its jurisdiction when dealing with education. That doesn't answer my question, counsel. I asked about 6-101. Is there any limitation in 6-101 concerning it applying to only places of public accommodation? No. Because it sets forth a separate cause of action. Does it not a civil rights violation, which is to be heard in circuit court? Well, first, people have to go through the department first, and then they can appeal that determination to circuit court. You can't simply file in circuit court. So I don't believe it grants you an ultimate right to be in circuit court. All right. Thank you, counsel. Thank you. Just a couple brief points. With respect to the academic decision, I'm going to go back to the Horowitz case and how it describes the procedures of a disciplinary nature and what's called for, and those procedures or lack of procedures which are called for in a true academic decision. Defendants' own actions in this whole process reflect more of a disciplinary type situation. The retaliatory conduct was the dismissal. The dismissal is very clear. It revolves one instance of him bringing Madeline to an MRI suite. These other allegations, which are in the pleadings, would... Why is that even... Why did you even bring that up if your claim is that you argued that this hospital engaged in improper racial discrimination and they retaliated against your client for doing that? Why does it matter about the MRI? As you heard in my discussion, it seems to me that all this other stuff is somewhat surplusage, getting in the way of your claim. Why do you keep mentioning that? Well, first, the transcript was not provided to me until after the third amended complaint. The transcript of the hearing, the due process transcript, which is attached, I believe, to the reply on the third amended complaint, that was not provided to me until that time when we were to file the reply. And then also, just to give context to the factual background of the whole situation. Well, as you see, it gets in the way of what it seems to me you're... And you keep arguing it. But see, this MRI thing was a pretext. Well, that would be their defense, not your cause of action. Because to the extent that we're talking about getting fired because or discharged because of a claim of MRI, that's your point. That would be an academic matter for the hospital and the university. But we don't think it's an academic matter because it relates to his conduct. And so let's look at what... If he weren't... Is he black or Asian? I forget. He's African American. Okay. If he weren't black and we just had this incident with regard to the MRI, you'd have no case at all. It would just be an academic matter. Forget about it. Right? It... They could fire him and maybe even be mistaken about it, but it's an academic matter and you'd have nothing. I guess I'm not understanding. So what you're saying is that if this was just solely the MRI incident, there would be no pretext for discrimination? Yes. Yes. Yeah. And so I guess that is why some of that was in there to give it context, to show that he did bring up this discrimination issue to the director of the program prior to this happening. And then this is not about saying that the rule that you can't bring a medal into an MRI suite is an invalid rule, which I think would get academic. This is simply looking at the facts and the evidence or the lack thereof of whether he brought something into an MRI suite.  And then finally, the limited jurisdiction as to educational facilities does not apply to the retaliation claim. It's a whole separate article. And in it, it explicitly talks about the subsection that has education, A11, 101A11. Thank you. Thank you. Thank you both. Council will take this matter under advisement and a written decision shall issue.